**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, | Case No.: |
| Plaintiffs, | |
| v. | Judge: |
| JOHNSON & BELL, LTD., GLENN F. FENCL, and RICHARD R. GORDON, | |
| Defendants. | Magistrate Judge: |

**COMPLAINT**

Plaintiffs, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, by and through their attorney of record, Matthew R. Wildermuth and the Law Offices of Matthew R. Wildermuth, and for their Complaint against the Defendants, JOHNSON & BELL, LTD., GLENN F. FENCL, ESQ., and RICHARD R. GORDON, ESQ. (hereinafter collectively referred to as "Defendants"), allege the following:

**PARTIES**

1. Certain Underwriters at Lloyd's, London ("Underwriters") are a syndicate consisting of members who are authorized to underwrite and insure risks with Lloyd's, London, and have a principal place of business in London, England. None of Underwriters' members are domiciled in the State of Illinois.

2. Defendant JOHNSON & BELL, LTD. (hereinafter referred to as "J&B") is a corporation incorporated under the laws of the State of Illinois, located at 33 West Monroe Street, Chicago, Illinois 60603, engaged in the business of practicing law.

1

3. Defendant GLENN F. FENCL, ESQ. (hereinafter referred to as "Fencl") is an individual who was under the employment of J&B at all times relevant hereto and is a citizen of the State of Illinois who is licensed to practice law in the State of Illinois.

4. Defendant RICHARD R. GORDON, ESQ. (hereinafter referred to as "Gordon") is an individual who was under the employment of J&B at all times relevant hereto and is a citizen of the State of Illinois who is licensed to practice law in the State of Illinois.

## JURISDICTION AND VENUE

5. Jurisdiction is based upon diversity of residency of the parties under 28 U.S.C. §1332(a) because the parties are diverse and because amount in controversy of this action exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because at least one of the Defendants is domiciled in the State of Illinois and a substantial part of the events or omissions giving rise to Underwriters' claim for legal malpractice occurred within this District.

## FACTUAL BACKGROUND

7. Underwriters subscribed to a Commercial General Liability policy of insurance, Certificate No. CRC000860, issued to the Named Insured "Franklin Construction Company" (hereinafter referred to as "FCC"), for a one year term incepting March 8, 2007 ("the Policy"). A true and correct copy of the Policy and the incorporated CRC Contractors Program Application ("the Application") is attached hereto as "Exhibit A."

8. On March 2, 2007, Phillip Koerner ("Koerner") executed the Application on behalf of FCC.

9. The Application indicates that FCC was the sole "Applicant" for the Policy and specifically identified FCC as a "Corporation."

10. The Policy was subsequently issued to "Franklin Construction Company," which is the sole entity identified as a Named Insured in the Policy's Declarations. Further, FCC is specifically designated in the Declarations as an "Organization, including a Corporation (but not including a partnership, joint venture or limited liability company)."

11. The Application is included in and forms a part of the Policy, pursuant to the Forms Schedule attached to the Policy.

12. In addition, the Policy states in pertinent part as follows:

\*       \*       \*

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

\*       \*       \*

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no

3

>duty to defend the insured against any "suit" seeking damage for "bodily injury" or "property damage" to which this insurance does not apply. …
>
>\* \* \*
>
>No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
>
>b. This insurance applies to "bodily injury" and "property damage" only if:
>
>>(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory;
>>
>>(2) The "bodily injury" or "property damage" occurs during the policy period; …
>
>\* \* \*
>
>**SECTION II – WHO IS AN INSURED**
>
>1. If you are designated in the Declarations as:
>
>\* \* \*
>
>>d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

13. Further, the Policy contains an Additional Insured Endorsement, which provides that:

    Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" … caused in whole or in part by … Your acts or omissions; or …the acts or omissions of those acting on your behalf. …

14. The only entity identified in the aforementioned Schedule is the "Chicago Park District."

4

15. On or about April 9, 2008, Underwriters were notified of a civil lawsuit filed in the Circuit Court of Cook County, Illinois on November 13, 2007 by Paul Lewis styled *Paul Lewis v. Phillip Koerner and Franklin Construction and Development, Inc.*, Case No. 07 L 012823 (hereinafter referred to as the "Lewis Lawsuit"). A true and correct copy of the complaint in the Lewis Lawsuit is attached hereto as "Exhibit B."

16. Underwriters, thereon, retained J&B's services to analyze coverage and to prepare and file a complaint for declaratory judgment as necessary in connection with the Lewis Lawsuit.

17. On or about February 20, 2009, Underwriters were notified of a civil lawsuit filed in the Circuit Court of Cook County, Illinois on December 29, 2008 by Christine Zarndt styled *Christine L. Zarndt v. Phillip A. Koerner and Franklin 1631 Milwaukee, LLC*, Court No. 08 CH 48174 (hereinafter referred to as the "Zarndt Lawsuit"). A true and correct copy of the complaint in the Zarndt Lawsuit is attached hereto as "Exhibit C."

18. Underwriters, thereon, retained J&B's services to analyze coverage and to prepare and file a complaint for declaratory judgment as necessary in connection with the Zarndt Lawsuit.

    **A.**    **Allegations Related to the Lewis Lawsuit**

19. The Lewis Lawsuit alleges that Franklin C&D was a "real [e]state (*sic*) agency incorporated … under the laws of Illinois and doing business in the County of Cook." The Lewis Lawsuit also alleges that Koerner and Franklin C&D owned, managed and maintained a multi-unit apartment building at 1834 West Iowa Street, Chicago, Illinois.

20. The Lewis Lawsuit alleges that on June 14, 2007, Lewis was a guest of a tenant at the Property and was injured when he fell through an unlatched doorway and down the basement stairs, suffering a skull fracture and a serious closed head injury. The Lewis Lawsuit further alleges that

Franklin C&D and Koerner were careless and negligent in maintaining the Property and failed to properly construct and maintain the doorway and stairway.

21. FCC, the Policy's Named Insured, was not a named defendant in the Lewis Lawsuit and there are no allegations directed against Koerner in his capacity as an executive officer, director or stockholder of FCC.

22. On or about July 1, 2008, Cannon Cochran Management Services, Inc. (hereinafter referred to as "CCMSI"), on behalf of Underwriters as their third party claims administrators, retained J&B to analyze coverage under the Policy for the Lewis Lawsuit.

23. On or about July 10, 2008, J&B sent correspondence to CCMSI advising that they believed the allegations contained in the Lewis Lawsuit triggered Underwriters' obligation to defend Franklin C&D and Koerner subject to a reservation of rights as to the Prior Completed Work Exclusion, since there was a "substantial likelihood" that discovery would demonstrate that any work conducted on the building by Franklin C&D occurred prior to the inception date of Underwriters' Policy. A true and correct copy of the July 10, 2008 correspondence is attached hereto as "Exhibit D."

24. J&B failed to identify and report the following critical facts to Underwriters: (a) FCC, the Named Insured, was not named as a defendant in the Lewis Lawsuit; (b) Franklin Construction and Development, Inc. ("Franklin C&D") is not identified in the Policy Declarations, is not a Named Insured under the Policy, and does not have "Additional Insured" status under the Policy; (c) Koerner did not request a defense for himself, individually, under the Policy; and (d) the Lewis Lawsuit contains no allegations against Koerner in his capacity as an executive director, officer or stockholder of FCC. As a result, there was no basis to recommend that Underwriters should defend Koerner and Franklin C&D.

25. In or about August 2008, pursuant to J&B's advice, Underwriters retained defense counsel to represent Koerner and Franklin C&D in connection with the Lewis Lawsuit. On August 28, 2008, defense counsel filed an appearance only on behalf of Franklin C&D.

26. On or about April 27, 2009, approximately eight months after J&B recommended that Underwriters defend Koerner and Franklin C&D. J&B sent CCMSI correspondence recommending that Underwriters deny coverage and file a declaratory judgment action. A true and correct copy of the April 27, 2009 letter is attached as "Exhibit E."

27. J&B's April 27, 2009 letter states "the Prior Completed Work Exclusion Endorsement … unambiguously precludes coverage for both Koerner and Franklin Construction and Development" since the alleged work on the stairway occurred in 2004 or 2005.

28. The April 27, 2009 letter also states:

> Independent of the Prior Completed Work Exclusion, *we do not believe there could ever be coverage for Franklin Construction and Development in this matter, because Franklin Construction and Development is not an insured under [the Policy]. [The Policy] was issued to Franklin Construction Company as Named Insured.* The Declarations Page only indicates Franklin Construction Company as the named insured. The policy does not indicate Franklin Construction and Development as a named insured or an additional insured. Further, there is no extension of coverage to any company other than Franklin Construction Company anywhere in the [Policy]. To that end, we suggest that [Underwriters] additionally disclaim coverage to Franklin Construction and Development for failing to qualify as an additional insured under the policy. (*Emphasis added*.)

29. Defendants also opined there is no coverage under the Policy for Koerner because any alleged bodily injury "occurred with respect to Koerner's duties as an officer or director of Franklin Construction and Development and not as an officer or director of Franklin Construction Company. We believe this fact provides an independent basis for denial of coverage to Koerner."

7

30. Defendants therefore recommended the issuance of a denial letter by Underwriters and the filing of a complaint for declaratory judgment as "appropriate courses of action."

31. The following day, on April 28, 2009, Defendants filed a Complaint for Declaratory Relief on behalf of Underwriters in the Circuit Court of Cook County, Chancery Division, styled *Certain Underwriters at Lloyd's, London, Subscribing to Certificate No. CRC000860 v. Franklin Construction and Development, Inc., an Illinois corporation, Phillip A. Koerner, Individually, and Paul Lewis, Individually*, Case No. 09 CH 16235 (hereinafter referred to as the "Lewis DJ"). A true and correct copy of the Lewis DJ is attached hereto as "Exhibit F."

32. The Lewis DJ alleges, *inter alia*, that Underwriters were not obligated duty to defend Koerner for the Lewis Lawsuit since any "bodily injury" alleged did not occur with respect to Koerner's duties as an officer or director of FCC.

33. Further, the Lewis DJ alleges:

> 6. On and prior to June 14, 2007, Koerner was also the sole proprietor of an organization known as Franklin Construction Company.
>
> \* \* \*
>
> 10. At some point prior to January 1, 2006, Koerner, *in his capacity as owner* of the Building and *sole proprietor of Franklin Construction Company, hired Raymond Casterjon to conduct maintenance on certain stairs in the Building*." (*Emphasis added*.)

34. Underwriters are informed and believe, and thereon allege, that the two facts referenced-above are inaccurate. Had coverage been properly reviewed and analyzed by the Defendants, it is unlikely that the Lewis DJ would have included these allegations, which are facts detrimental to Underwriters.

8

35. The Lewis DJ further alleges that Underwriters have no duty to defend Franklin C&D because Franklin C&D "does not qualify as a Named Insured" under the Policy "and the Underwriters' policy does not otherwise contain any additional insured endorsement."

36. Contrary to J&B's allegation in the Lewis DJ, the Policy does in fact contain an Additional Insured Endorsement (see *supra* at Paragraph 14), albeit one that does not extend coverage to any of the entities names as defendants in the Lewis Lawsuit.

37. The Lewis DJ also asserts that the allegations in the Lewis Lawsuit "fail to trigger coverage" because "even if the Lewis lawsuit alleged liability with respect to Koerner's duties as an officer or director of Franklin Construction Company" any alleged "bodily injury" arose out of "Franklin Construction Company's work at the Building completed prior to the inception date of the Underwriters policy."

38. The Defendants failed to include FCC, the Named Insured under the Policy and a necessary party, as a defendant in the Lewis DJ.

    **B.**    **Allegations Related to the Zarndt Lawsuit**

39. The Zarndt Lawsuit alleges that Koerner "either individually, or through an entity he controls" acquired vacant land at 1631 North Milwaukee Avenue, Chicago, Illinois and subsequently constructed a four-story building, the top third and fourth floors of which consisted of a two-story condominium. In September 2007, Zarndt entered into a Purchase Agreement with "Koerner, individually" for the sale and purchase of the condominium to be constructed by Koerner. Prior to closing on the Condominium in November 2007, Zarndt conducted a final walk through "to review the state of completion of construction," at which time it was discovered that "a host of items were not completed." Pursuant to the Purchase Agreement a "punch list" was prepared for those items

needing completion. The Zarndt Lawsuit alleges that the items on the punch list were never completed and that defective construction resulted in water and mold damage to the Condominium. Zarndt seeks rescission of the Purchase Agreement or, in the alternative, damages equal to the diminished value of the Property.

40. FCC is not named in the Zarndt Lawsuit and there are no allegations directed against Koerner in his capacity as an executive officer, director or stockholder of FCC.

41. On or about February 25, 2009, CCMSI, on behalf of Underwriters as its third party claims administrators, advised FCC that there is no coverage under the Policy for the Zarndt Lawsuit. Concurrently on this date, CCMSI, on behalf of Underwriters, retained J&B to file a declaratory judgment action in connection with Underwriters' coverage position.

42. On or about April 28, 2009, Defendants filed a Complaint for Declaratory Relief on behalf of Underwriters in the Circuit Court of Cook County, Chancery Division, styled *Certain Underwriters at Lloyd's, London, Subscribing to Certificate No. CRC000860 v. Phillip A. Koerner, Individually, Franklin 1631 Milwaukee, LLC and Christine L. Zarndt, Individually*, Case No. 09 CH 16234, (hereinafter referred to as the "Zarndt DJ"). A true and correct copy of the Zarndt DJ is attached hereto as "Exhibit G."

43. Franklin 1631 Milwaukee, LLC ("Franklin 1631 Milwaukee") is not identified in the Policy Declarations, is not a Named Insured under the Policy, and does not have "Additional Insured" status under the Policy.

44. The Zarndt DJ alleges, *inter alia*, that "Franklin Milwaukee [sic] is not listed as a Named Insured or Additional Insured" under the Policy and that there is no duty to defend Koerner under the Policy because any alleged property damage arose out of the conduct "of a current or past

10

limited liability company – Franklin 1631 Milwaukee, LLC – that is not shown as a Named Insured" under the Policy.

    45.    The Zarndt DJ also alleges that there is no coverage for Franklin 1631 Milwaukee under the Policy because:

- Any property damage was "expected or intended by Franklin 1631 Milwaukee";
- Any liability "was contractually assumed by Franklin 1631 Milwaukee";
- Any property damage "arose out of operations to that particular part of real property on which Franklin 1631 Milwaukee or its subcontractors were performing operations";
- "[N]either Franklin Construction Company nor Franklin 1631 Milwaukee" complied with the Sub-Contractor's Warranty Endorsement; and
- "Franklin 1631 Milwaukee did not notify [Underwriters] of the claims" within a reasonable amount of time.

    46.    J&B failed to include FCC, the Named Insured under the Policy, as a defendant in the Zarndt DJ.

## **FIRST CAUSE OF ACTION - NEGLIGENCE**

### **LEGAL MALPRACTICE AS TO THE LEWIS MATTER**
### **(AGAINST ALL DEFENDANTS)**

47. Underwriters hereby incorporate the allegations set forth in Paragraphs 1 through 38, inclusive, as if set forth in full herein.

48. On or about July 1, 2008, Underwriters, through its third party administrators, retained the services of Defendants to analyze coverage and to prepare and file a complaint for declaratory judgment as necessary in connection with the Lewis Lawsuit.

49. At all relevant times, an attorney-client relationship existed between Underwriters and Defendants.

50. This Complaint is being filed within two years of the discovery by Underwriters of the facts constituting the professional negligence and within six years of the wrongful acts as required by 735 Illinois Compiled Statutes Annotated 5/13-214.3.

51. Defendants breached their duty to Underwriters by failing to use a reasonable degree of professional care and skill required in their representation of Underwriters in connection with the Lewis Lawsuit and the Lewis DJ. Specifically, but without limiting the generality of the foregoing, Defendants engaged in the following negligent course of conduct that constitutes legal malpractice:

    a) Defendants opined that Underwriters had a duty to defend Koerner and Franklin C&D in the Lewis Lawsuit, despite the fact that the Lewis Lawsuit is not directed against the Named Insured under the Policy, FCC, and does not include any allegations against Koerner in his capacity as an executive officer, director or stockholder of FCC; therefore, no "insured" within the definition of the Policy was ever named in the Lewis

Lawsuit. In addition, Franklin C&D is not identified in the Policy Declarations, is not a Named Insured under the Policy, and does not have "Additional Insured" status under the Policy. Further, the Lewis Lawsuit contains no allegations that could trigger a duty to defend under the Policy. As a result, there was no basis to recommend that Underwriters undertake the defense of Koerner and Franklin C&D in the Lewis Lawsuit and Defendants' conduct is below the reasonable degree of care and skill that was owed to Underwriters by Defendants.

b)  Despite the fact that no new information existed regarding the identity of the Named Insured entity under the Policy or the allegations contained in the Lewis Lawsuit, on or about April 27, 2009, approximately <u>eight months</u> after Defendants recommended that Underwriters defend Koerner and Franklin C&D, Defendants sent a letter to Underwriters, through its third party administrator, *reversing* their earlier position and stating "…we do not believe there could ever be coverage for [Franklin C&D] in [the Lewis Lawsuit], because since [Franklin C&D] is not an insured under [the Policy]," and further stating, *inter alia*, that there is no coverage under the Policy for Koerner because any alleged bodily injury "occurred with respect to Koerner's duties as an officer or director of Franklin Construction and Development and not as an officer or director of Franklin Construction Company." This conduct is below the reasonable degree of care and skill that was owed to Underwriters by Defendants.

c)  Defendants then filed the Lewis DJ, which failed to include the Named Insured, FCC, as a defendant. As a result, any judgment rendered in the Lewis DJ would be a nullity because it: (1) fails to include the Named Insured; (2) fails to bind the Named

Insured; (3) fails to name a necessary party. This conduct is below the reasonable degree of care and skill that was owed to Underwriters by Defendants.

  d)  Defendants then alleged facts that were contrary to the allegations contained in the Lewis Lawsuit and were inaccurate and/or detrimental to Underwriters' position in the Lewis DJ by alleging that Koerner was the "sole proprietor" of an "organization" and was acting "in his capacity as …sole proprietor of [FCC]" when he hired an individual to perform the work on the stairs at issue in the Lewis Lawsuit. The foregoing allegations are contrary to the statements contained in the Application for the Policy and are also contrary to the allegations contained in the Lewis Lawsuit, which makes no allegations against Koerner in his capacity as an executive officer, director or shareholder of FCC. This conduct is below the reasonable degree of care and skill that was owed by Defendants to Underwriters.

  52.  As a direct and proximate cause of Defendants' negligent conduct, Underwriters have incurred, and are continuing to incur, unnecessary defense fees in connection with the ongoing defense of the Lewis Lawsuit on behalf of Franklin C&D, as well as unnecessary legal fees paid to J&B for their incorrect, improper and negligent coverage analysis and improperly pled complaint for declaratory relief. Upon discovering Defendants' errors and omissions, Underwriters had no choice but to retain the services of another law firm in an effort to remediate the legal harm suffered by Underwriters solely attributable to Defendants, incurring further legal fees and costs.

  53.  All steps taken beyond Defendants' initial review of the Lewis matter are the direct result of Defendants' failure to exercise a reasonable degree of professional care and skill, resulting in damages to Underwriters in excess of the minimum jurisdiction of this court.

## SECOND CAUSE OF ACTION – NEGLIGENCE

### LEGAL MALPRACTICE AS TO THE ZARNDT MATTER
### (AGAINST ALL DEFENDANTS)

54. Underwriters hereby incorporate by this reference the allegations set forth in Paragraphs 1 through 18 and 39 through 46, inclusive, as if set forth in full herein.

55. On or about February 28, 2009, Underwriters, through its third party administrators, retained the services of Defendants to analyze coverage and to prepare and file a complaint for declaratory judgment as necessary in connection with the Zarndt matter.

56. At all relevant times, an attorney-client relationship existed between Underwriters and Defendants.

57. This Complaint is being filed within two years of the discovery by Underwriters of the facts constituting the professional negligence and within six years of the wrongful acts as required by 735 Illinois Compiled Statutes Annotated 5/13-214.3.

58. Defendants breached their duty to Underwriters by failing to use a reasonable degree of professional care and skill required in their representation of Underwriters in connection with the Zarndt Lawsuit and the Zarndt DJ. Specifically, but without limiting the generality of the foregoing, Defendants engaged in the following negligent course of conduct that constitutes legal malpractice:

    a) On or about February 25, 2009, Defendants were retained to represent Underwriters in the Zarndt matter and were provided with related documents including, *inter alia*, the complaint in the Zarndt Lawsuit. The Named Insured under the Policy, FCC, was never named as a defendant in the Zarndt Lawsuit and there are no allegations against Koerner in his capacity as an executive officer, director or stockholder of FCC; therefore, no

"insured" under the Policy was named in the Zarndt Lawsuit. Defendants failed to apprise Underwriters of this fact. This conduct is below the reasonable degree of care and skill that was owed by Defendants to Underwriters.

  b)  Defendants then filed the Zarndt DJ but failed to name the Named Insured, FCC. As a result, any judgment rendered in the Zarndt DJ would be a nullity because it: (1) fails to include the Named Insured; (2) fails to bind the Named Insured; (3) fails to name a necessary party. This conduct is below the reasonable degree of care and skill that was owed by Defendants to Underwriters.

  c)  In addition, despite the fact that Franklin 1631 Milwaukee is not identified in the Policy Declarations, is not a Named Insured under the Policy, and does not have "Additional Insured" status under the Policy, the Zarndt DJ repeatedly alleges that Franklin 1631 Milwaukee failed to adhere to the terms of the Policy. This conduct is below the reasonable degree of care and skill that was owed by Defendants to Underwriters.

59. As a direct and proximate cause of Defendants' negligent conduct in their handling of the Zarndt Lawsuit and the Zarndt DJ, Underwriters incurred and paid unnecessary and unreasonable legal fees in connection with Defendants' services. Upon discovering Defendants' errors and omissions, Underwriters had no choice but to retain the services of another law firm in an effort to remediate the legal harm suffered by Underwriters solely attributable to Defendants, incurring further legal fees and costs.

60. All steps taken beyond the initial review of the Lewis matter and the Zarndt matter are a direct result of Defendants' failure to exercise a reasonable degree of professional care and skill, resulting in damages to Underwriters in excess of the minimum jurisdiction of this court.

## **PRAYER**

**WHEREFORE**, Underwriters pray for judgment against each of the Defendants as follows:

1. For all attorneys' fees and costs incurred and paid by Underwriters directly attributable to Defendants' failure to exercise a reasonable degree of professional care and skill, and according to proof;

2. for costs associated with this action according to proof;

3. for such other and addition relief as this Court deems just and equitable.

Respectfully submitted,

CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON

By: s\ Matthew R. Wildermuth
One of Their Attorneys

Matthew R. Wildermuth, Esq.
LAW OFFICES OF MATTHEW R. WILDERMUTH
1900 W. 75TH Street
Woodridge, IL 60517
(630) 967-7557, (312) 264-0652 (Fax)
IL Bar No. 6202106

Of Counsel:

Johnna J. Hansen, Esq. (California State Bar No. 112631)
Michael H. Lee, Esq. (California State Bar No. 199228)
THARPE & HOWELL, LLP
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403
(818) 205-9955, (818) 205-9944 (Fax)